Acken *v.* Osborn.

WILLIAM H. ACKEN, executor of William Acken,

*v.*

JENNIE OSBORN.

A testator ordered that his residuary estate.be converted into personalty, and gave the interest on one-half thereof to his daughter Frances for life, and the principal to be equally divided, at her death, among such children as she might then have, "provided that if any child of my said daughter shall die before its mother, leaving children or a child, such child or children shall take the share of such deceased parent." Frances had but one child, a daughter Annie, who married one Graham in 1874, and died in 1875, leaving one child, who died in 1879. Frances died in 1885. Graham still survives.—*Held*, that Annie's child took Annie's share, not by way of substitution, but as an original gift, and that the share must now be disposed of according to the laws of Vermont which regulate the distribution of personal estate of intestates, that State being the place of her residence at her death.

On bill to construe will.

Acken *v.* Osborn.

*Mr. W. P. Voorhees,* for the complainant.

*Mr. J. H. Van Winkle,* for the defendant, Carmon R. Hetfield.

*Mr. John H. Jackson,* for the defendant, Jennie Osborn.

THE CHANCELLOR.

By his will, dated on the 20th day of January, 1854, and admitted to probate on July 10th, 1855, William Acken, after making sundry bequests, provided as follows:

"*Fourth.* It is my will and I hereby order and direct that all the residue and remainder of my estate, both real and personal, be sold and disposed of by my executors hereinafter mentioned as soon after my decease as may be convenient, and for the real estate to make, execute and deliver good and sufficient deed or deeds to the purchaser or purchasers thereof, that the interest arising yearly on the one-half of the proceeds of the sales of the said real and personal estate shall be paid yearly and èvery year to my said daughter Frances Vermule, during the period of her natural life, and after her decease I direct that said principal sum, viz, the said one half of the proceeds of the said sales shall be equally divided among *such children of my said daughter as she may then have,* provided always, that *if any child of my said daughter shall die before its mother, leaving children or a child, such child or children shall take the share of such deceased parent.*

"*Fifth.* I give and bequeath to the children of my deceased daughter Eliza, a judgment for $900 or thereabouts which I hold against their father Joseph M. Osborn; I also give and bequeath the interest accruing yearly on the remaining half of the said proceeds of the sales of the said real and personal estate, to the children of my said daughter Eliza, until they both arrive at the age of twenty one years, and to the survivor of them and when the said children arrive at such age the said principal sum, that is to say, the said remaining half of the proceeds of the sales of the real and personal estate shall be equally divided between the said last mentioned children or to the survivor of them, provided that if either of the said children shall die before arriving at the age of twenty-one years leaving a child or children, such child or children shall take the share of such deceased parent.

"*Sixth.* It is my will and I hereby order and direct that if both the children of my said daughter Eliza, should depart this life before they arrive at the age of twenty one years without having any lawful children, the bequests herein given to them, shall go to the children of my said daughter Frances, and if it should so happen that all the children of my said daughter Frances should depart this life before they arrive at the age of twenty one years, the bequests herein given to them shall go to the children of my daughter Eliza,

and in case the whole of my said grand-children should die before arriving at the age of twenty one years without leaving any child or children, then all the bequests herein given to them shall be equally divided among the children of my brothers and sisters, share and share alike."

Frances Vermule died in August, 1885. She had one daughter, Annie, who intermarried with Hildreth Graham, in June, 1874. Annie Graham died in May, 1875, at the age of twenty-six years, leaving her husband and one child, Annie May Graham, her surviving. This child, Annie May Graham, died in July, 1879. Hildreth Graham is yet living.

The testator's deceased daughter, Eliza, whose married name was Eliza Osborn, left two children—Elizabeth A. Hetfield, who became twenty-one years of age, and thereafter, in May, 1880, died, leaving her husband, Carmon R. Hetfield, and one son, Newton J. Hetfield, who died in January, 1882, under the age of twenty-one years, and without issue, and William A. Osborn, who died in October, 1870, above the age of twenty-one years, leaving a daughter, Jennie Osborn, who is now living.

When the children of Eliza Osborn attained the age of twenty-one years, one-half of the testator's residuary estate was divided among them, according to the directions of the will.

The question submitted is, as to what disposition shall be made of the remaining half of the residuary estate. It is claimed by Jennie Osborn, Carmon R. Hetfield, in right of his wife, and Hildreth Graham, in right of his daughter. Obviously, it must be treated as personal property, for the testator directed the conversion of the entire residue into money, and made provision for the disposition of. the "*interest*" therefrom. In the disposition of both interest and principal, he must be regarded as dealing with personalty.

Hildreth Graham claims as the father of Annie May Graham. Both his wife, Annie, and his daughter, Annie May, died before Frances Vermule. The bequest was to divide, at the death of Frances Vermule, the principal equally among "*such children of my said daughter as she may then have*," to which was added the proviso that if a child of Frances should die before her, leaving a child, such child should take the share of its parent.

It is an established rule of interpretation of a testator's inten-
tion, that, where the time specified in a bequest is annexed to the
payment only, as where a legacy is given, payable when the
legatee reaches a certain age, the legacy vests immediately upon
the testator's death, for it is a present gift, of which the day of
payment is postponed. But where the time specified is annexed
to the gift itself, as where the legacy is given to the legatee at
twenty-one, "*if*" or "*when*" he attains that age, the legacy is
contingent upon his reaching that age, and does not vest until
then. If he does not reach that age, it never vests. *Gifford* v.
*Thorn, 1 Stock. 702; 2 Wms. Ex. 1225.* In *Van Tilburgh* v.
*Hollinshead, 1 McCart. 32,* this rule was applied where a tes-
tator devised to his son certain real estate during his life, and
provided that "*at the decease* of my son William I will that his
said part of my landed property be given to *his surviving
children* according to law," and it was held that the estate was
contingent, and not vested, and that the estate vested, at the death
of the devisee for life, in his children that survived him.

In *Howell* v. *Green, 2 Vr. 570,* the rule was applied where
the testator bequeathed $1,000 to his sister for life, and then
provided, "and after her decease I give and bequeath the said
$1,000 to her two daughters, viz., Deborah and Sarah, equally
to be divided."

And where the gift is made only by a direction to pay, or to
divide and pay at a future time, or on a given event, the vesting
will be postponed until after that time has arrived, or that event
has happened, unless, from particular circumstances, a contrary
intention is to be collected. *Post* v. *Herbert, 12 C. E. Gr. 540.*
It is said, in *2 Wms. Ex. 1232,* that "this doctrine, in fact, only
assimilates the gift of a legacy under the form of a direction to
pay or divide at a future time, or on a given event, to the in-
stance already considered of the simple and direct bequest of a
legacy *at* a like future time, or a like event."

So far as the wife of Hildreth Graham is concerned, I see
nothing to take the case out of the rule just stated. She died
before her mother, Frances Vermule, and thus the possibility of
the happening of the contingency upon which the legacy was to

Acken *v.* Osborn.

vest in her was destroyed. But Hildreth Graham claims through his daughter, Annie May Graham. Did she at her death have a vested interest? As the legacy did not vest in Graham's wife, his daughter did not take by transmission from her mother. She either took an original gift under the will, or a substitutional gift engrafted upon the prior contingent gift to her mother.

In *Lanphier* v. *Buck, 2 Dr. & Sm. 484, 494,* Vice-Chancellor Kindersley said : "A gift is *substitutional* when the share which the issue are to take is by a prior clause expressed to be given to the parent of such issue; and a gift to issue is an *original* gift when the share which the issue are to take is not by a prior clause expressed to be given to the parent of such issue."

The distinction between cases of substitution and cases of substantative gift is put in *1 Roper on Legacies 31* (where the leading cases are referred to), as follows :

" Where there is a gift to a class of legatees living at a prescribed period, as to the children of A living at the decease of B, with a direction that if any of the legatees be then dead, their issue shall take the shares to which the parents, if then living, would have been entitled, there the issue living at the prescribed period take by way of *substitution* their parents' share. But if the gift over to the issue is sufficiently comprehensive to include the issue of all the individuals of the class of " children of A," whether living at the date of the will or otherwise, there the issue of any individual of the class " children of A," who could not himself have taken as one of the primary legatees, can only take by *substantive* gift, for they cannot take by substitution in place of a parent who never could himself have taken."

In the case in hand, the gift is to such children of Frances Vermule as she may have at her death, *i. e.* a class of legatees living at a prescribed period. Then follows the proviso :

" That if any child of my said daughter shall die before its mother, leaving a child or children, such child or children shall take the share of such deceased parent."

Here the primary legatees are children living at Frances's death. If the proviso had referred to any such *child* dying before its mother, the issue of that child would clearly take by

substitution, but the child dying is not restricted, by a qualifying word, to the class of primary takers, and hence the children of the child dying are original takers of a substantive gift.

I think that the case of *Smith* v. *Smith*, *8 Sim. 353*, is in point here. In that case the income of a fund was left by George Smith to his wife for her life, and after her decease the fund was to be divided among all his children "who might be *then* living," provided that if *any* or either of his children, who should happen to die in the lifetime of his wife, should have left issue, then such issue to take the share that their parent would have been entitled to if living, and Vice-Chancellor Shadwell held, that the bequest to the issue was substantive, for it let in issue whose parent was dead at the time of the making of the will, and who was not within the class designated to take, and who could not himself by any possibility have taken.

This brings me to the consideration of the question whether Annie May Graham, taking a substantive gift, should, in order to take it, have survived the period of distribution, that is, the death of Frances Vermule. It is now settled by the authorities that where children are substituted for legatees dying before a given period, without any *express* provision that such children shall survive that period, it is not permissible to engraft upon the gift to the issue an implied qualification in order to assimilate their interest to that of their parents. *2 Jarm. Wills (R. & T. ed.) 747; Hawk. Wills 253.*

The case of *Martin* v. *Holgate, L. R. (1 H. L. C.) 175*, seems to be much in point with this one. In that case a testator devised his estate to trustees to pay the income to his wife for life, and after her death to divide the principal among such of his four nephews and two nieces, who are named, as should be living at the time of the wife's death, providing that if any of them should be then dead leaving issue, such issue should be entitled to their father's and mother's share. It was held that the word "issue," as used in the will, meant children. Three of the nephews died in the lifetime of the testator's widow, two of them without ever having had a child, and one of them

leaving a daughter, and this daughter likewise died before the widow. It was there held that the gift to the issue or children was an original gift, not substitutional, and that the daughter of the nephew, upon her father's death, took a vested interest in the share which he would have taken if he had survived. The fact that the gift to the parent was contingent, was held not to affect the nature of the gift to the issue, which was an independent bequest.

My conclusion is, that the principal of the share of Frances Vermule was vested in Annie May Graham, and at the death of Frances Vermule belonged primarily to the administrator of her estate. Her domicile at her death appears to have been with her father in Vermont. The distribution of her estate will consequently be governed by the laws of that State.